37393. NATIONAL UNION FIRE INSURANCE COMPANY
*v.* CARMICAL *et al.*

DECIDED FEBRUARY 13, 1959.

102

*Pittman, Kinney & Pope, J. T. Pope, Jr.,* for plaintiff in error.
*Hardin, McCamy & Minor, Carlton McCamy, Mitchell & Mitchell, D. W. Mitchell, Jr.,* contra.

QUILLIAN, Judge. In this case an insurer prayed direction by declaratory judgment as to whether it was bound under the conditions of an insurance policy issued by it to defend certain suits instituted against the insured by parties injured through the alleged negligent operation of his truck. The policy attached to the petition in addition to the provisions quoted in the foregoing statement of fact contained clauses reading: "II. Definition, settlement, supplementary payments: with respect to such insurance as is afforded by this policy for bodily injury liability and for property damage liability, the company shall: (a) Defend any suit against the insured alleging such injury, sickness, disease or destruction and seeking damages on account thereof, even if such suit is groundless, false or fraudulent; but the company may make such investigation, negotiation and settlement of any claim or suit as it deems expedient."

"18. Assistance and cooperation of the insured—Coverages

A, B, D, E, F, G, H, I & J.   The insured shall cooperate with the company, and upon the company's request, shall attend hearings and trials and shall assist in effecting settlements, securing and giving evidence, obtaining the attendance of witnesses and in the conduct of suits.   The insured shall not, except at his own cost, voluntarily make any payment, assume any obligation or incur any expense other than for such immediate medical and surgical relief to others as shall be imperative at the time of accident."

The suits to which reference is made were brought by Paul Clayton and Mrs. Carolyn Clayton and arose out of injuries sustained by the Claytons in a collision with the truck before mentioned.   The petitions in the cases predicated the causes upon the negligent operation of the truck by the insured's son.

The petition in this case alleges that the insured made a statement to the effect that his son was not permitted to drive the truck and did not operate it for his benefit on the occasion when the Claytons were injured.   This allegation is followed by averments that, after the suits were filed but before the appearance day of the cases, the insured retracted the statement previously made and informed the insurer that he did permit his son to drive the truck and that the son was operating it for his benefit when the collision with the Claytons' automobile occurred.

The petition alleges that the insurer is uncertain as to whether the consequence of the misstatement and the conflicts in the statements made by the insured released it from the contractual obligation to defend the Claytons' suits.   It is in reference to its duty to interpose defensive pleadings on behalf of the insured that direction is specifically sought.

The case is one of first impression in this State, but there is ample authoritative text and opinions of the courts of other jurisdictions to serve as guides to a correct decision of the questions to be decided.

Certain it is that the misrepresentation of an insured must prejudice the rights of the insurer in order to release the latter from its duty to defend actions under a clause similar to the one contained in this suit.   In Standard Accident Insurance Co. of Detroit, Michigan v. Winget, 197 F. 2d 97 (34 A.L.R. 2d 250, 251 (6), it is held that a misrepresentation by one insured by

an automobile liability insurance policy, to constitute a violation of the provision requiring the insured to cooperate with the insurer, must be material, and the false statement is not considered material where it is withdrawn or corrected in time not to prejudice the defense of the case.

There is other authority supporting this view. In the annotations following the Winget case in 34 A.L.R. 2d, supra, are the notes: "Misstatements by the insured promptly and seasonably corrected or withdrawn prior to the trial of the action against the insured have been held not to constitute a violation or breach of the co-operation clause. United States.—Wheeler v. Lumbermen's Mut. Casualty Co. (1933, DC Me) 5 F Supp 193. For federal cases applying state law, see state hearings infra.; Alabama.—General Acci. Fire & Life Assur. Corp. v. Rinnert (1948, CA5th Ala) 170 F2d 440; California.—Standard Acci. Ins. Co. v. Winget (1952, CA9th Cal) 197 F2d 97, 34 ALR2d 250; Illinois.—Rowoldt v. Cook County Farmers Mut. Ins. Co. (1940) 305 Ill. App. 93, 26 NE2d 903; Oregon.—Pacific Indem. Co. v. McDonald (1939, CA9th Or) 107 F2d 446, 131 ALR 208. See Denley v. Oregon Auto. Ins. Co. (1935) 151 Or 42, 47 P2d 245, 946, infra, § 10; Pennsylvania.—Conroy v. Commercial Casualty Ins. Co. (1928) 292 Pa 219, 140 A 905. . .

"Even where the misstatement is persisted in until shortly before the trial of the action against the insured, no breach has been found, where the insurer failed to show that the delay in telling the truth had prejudiced it. United States.—For federal cases applying state law, see state headings infra. Illinois.— Norwich Union Indem. Co. v. Haas (1950, CA7th Ill) 179 F2d 827; Michigan.—Bernadich v. Bernadich (1938) 287 Mich 137, 283 NW 5; Missouri.—Cowell v. Employers' Indem. Corp. (1930) 326 Mo 1103, 34 SW2d 705; New Jersey.—Rockmiss v. New Jersey Mfrs. Asso. Fire Ins. Co. (1934) 112 NJL 136, 169 A 663; Rhode Island.—Marley v. Bankers' Indem. Ins. Co. (1933) 53 RI 289, 166 A 350."

The rule is stated in 29 Am. Jur. 601, §§ 792, 793: "An unintentional and accidental mistake in a statement of facts, made by the insured under a liability policy, especially if afterward seasonably corrected, does not establish such a lack of co-opera-

tion as will create a defense for the insurer. Moreover, the mere inadequacy or untruthfulness of a statement made by the insured to the insurer, as to the circumstances of an accident, does not of itself necessarily constitute a breach of a co-operation clause. . .

"The mere fact that the insured modifies or repudiates statements as to the accident and attending circumstances favorable to the defense does not necessarily constitute a breach of a co-operation clause of a liability policy, but such modification or repudiation may constitute a breach if fraudulent or a result of a collusive attempt to help the injured person."

The petition affirmatively showed that the first statement was withdrawn by the insured and another which was not alleged to be false substituted in its stead. Thus the petition shows that the insured supplied the insurer with what the defendant contends was correct and truthful information as to his son's authority and purpose in operating the truck on the occasion when it collided with the Claytons' automobile in ample time for the insured to prepare and file the defense it was bound to make in behalf of the insured.

The petition does not charge the insured with wilfully or consciously making an untruthful statement. There is ample authority for the view that a mere inaccurate or untrue statement, even when not seasonably withdrawn, does not necessarily constitute a failure on the part of the insured to comply with policy requirements that he cooperate with the insured in the preparation of a defense the latter is under the terms of the policy bound to defend in his behalf. The view is generally taken that the insured's statements must not only possess the quality of falsity but must have the taint of wilful deception on the part of its author. Albert v. Public Service Mut. Casualty Ins. Corp. (1943) 266 App. Div. 284, 42 N.Y.S.2d 124, affd. without op. 292 N.Y. 633, 55 N.E.2d 507.

In the case of Rockmiss v. N. J. Mfrs. Assn. F. Ins. Co., (1934) 169 A. 663, the case most nearly resembling the facts of this case, a like conclusion was reached. It was held that the fact that the insured gave conflicting statements to the insurer, the first of which exculpated the insured from blame, and the second

tended to place liability upon him, was not a "failure to co-operate". "The insured is not accused of collusion with respondent in an effort to impose a fraudulent claim upon the insurer. It is not claimed that his second statement is tainted with falsity. On the contrary, appellants contend that they suffered detriment and injury by reason of the untruthful version of the occurrence given in the first statement. . . His [first] version of the occurrence . . . tended to exculpate him from negligence. It cannot be said that this denotes a failure to co-operate. . . Rather the reverse is the case. The insured thereby evinced a willingness and purpose to co-operate with and assist the insurer in resisting the claims for damages asserted by plaintiff. . . The conduct complained of is not within the letter or spirit of this clause of the contracts. If appellants' construction be adopted, the policyholder who denied negligence, and persisted in the denial until found guilty by a jury, would furnish grounds for avoidance. An adverse verdict would work a forfeiture. . . It is a firmly established rule of construction that policies of insurance will be liberally construed to uphold the contract, and conditions contained in them which create forfeitures will be construed most strongly against the insurer and will never be extended beyond the strict words of the policy. The court will never seek for a construction of a forfeiture clause in a policy which will sustain it, if one which will defeat it is reasonably deducible from the terms and words used to express it."

This case also holds that the insurance company is not injured by the contradictory statements given it by its insured where, prior to the time it is necessary for it to answer the suit, the true facts are made known to it, and it still has ample time, between then and trial, to investigate or settle the claim. Under the view expressed in this case, "failure to cooperate" which voids the policy must be limited to actions intended to be beneficial to the opposite side, and does not include a too enthusiastic resistance of the action, the effect of which would be to relieve the insurer of liability.

If absolute accuracy and complete consistency be made the standard of cooperation, the insurer's promise to defend actions of a particular nature brought against the insured can be voided

in nearly every instance. The insured may overlook a fact, that when taken into consideration demands that in giving a truthful account of the matter, he change his original statement. The treachery of memory has been recognized in the fiction and history of the ages, and many a truthful man unwittingly tells what but for a failure of recollection he would know to be false. Thus the facts that the insured withdraws a statement and gives another inconsistent does not necessarily mean he was conscious that the first was untruthful when it was made.

There is an averment that the insurer was deceived for a season by the first statement attributed to the insured, but the petition does not charge that the insured wilfully or intentionally misled the insurer to its detriment.

The petition alleges that the insured by informing the insurer, in his original statement, that his son was not on the occasion of the collision driving with his permission or for his benefit, caused the insurer not to negotiate with the Claytons in an effort to settle their claims before their suits were brought. In the first place we must revert to the observation that the petition contains no allegation showing the insured acted in bad faith or intentionally misinformed the insurer concerning his son's authority of the purpose for which he operated the truck. Moreover, the petition does not allege: (a) that the insurer could have settled the Claytons' claim for less than they will recover in the suits filed by them, or even less than the amount for which they sued; (b) that there was merit in the Claytons' claims; or that they can legally recover in the suits they have filed; (c) or that defenses could not be made after the suits were filed as could have been made prior thereto.

In the absence of allegations of the nature indicated the petition fails to show either that the insurer was prevented from making a settlement of the Claytons' claims or that the settlement of those claims would be to the insurer's interest.

In Standard Accident Insurance Co. of Detroit, Michigan v. Winget, 197 F. 2d 97, supra, the view is expressed that where, as in this case there was timely withdrawal of the untrue statement, even though after the suits were filed against the insured, the insurer's opportunity to settle the case was not impaired,

since the claims of the plaintiffs might be settled after the suit was brought as well as before. The language of the Winget case at page 258 is: "While these decisions were made under Oregon and Alabama law respectively, they represent the majority rule in cases of this character which has been accepted by writers on the subject. Blashfield's Cyclopedia of Automobile Law and Practice, Perm Ed, 1945, Vol 6, Part 2, Sec 4059, pp 74, 78. They comport with the spirit of the California cases we have discussed. They stress the fact that the misrepresentation must be material. And it is not considered material when the false statement is withdrawn or corrected in time not to prejudice the defense of the case. As said in General Acci. Fire & Life Assur. Corp. v. Rinnert, supra, 170 F2d at page 442: 'The misstatement was corrected long prior to the trial of the causes which resulted in the judgment; the insurance company had the facts and was in position to settle if it saw fit to settle, to defend if it saw fit to defend as it did.' "

We are of the opinion that the petition did not show the existence of a justiciable issue as to whether there was such failure to cooperate on the part of the insured as to voiding the policy or releasing the insurer from its policy to defend the actions on behalf of the insured in conformity with the provisions of the policy.

*Judgment affirmed. Gardner, P. J., Townsend, Carlisle and Nichols, JJ., concur. Felton, C. J., dissents.*

FELTON, Chief Judge, dissenting. I think the petition showed a justiciable issue especially in view of the fact that no general demurrer or motion to dismiss was filed. It was a jury question, under the allegations of the petition, whether the insured breached the "cooperation" clause of the policy. The agreement to cooperate in such a case means cooperate sincerely and in good faith. The insurance company had the right to introduce evidence on the question of the insured's cooperation in good faith. Such a conflict in information given to the insurance company certainly might have been found by the jury to be material, and one version to have been given in bad faith unless satisfactorily explained. If the insured failed to cooperate in good faith the insurance company was deprived of the right to

try to settle the case before an action was filed against the insured. Certainly the insurance company could not be required to prove that it could have succeeded in making a settlement before suits were filed, and it is not unreasonable to contend that a better settlement could be made before the filing of suits than afterwards. Surely it had the right to make the effort but was prevented from doing so. I do not think that the authorities cited by the majority fit this case or constitute persuasive or valid authority for the conclusion reached. I think the court erred in declaring the rights of the insured without stating what they were and in not submitting the one issue to the jury upon evidence introduced by the parties.

While the following does not pertain in any way to the foregoing dissent, it seems to be fitting to express my opinion on the subject matter involved. Prayer (d) of the petition for declaratory judgment here involved is as follows: "That the court declare the plaintiff's rights, status and other legal relations with each of the defendants in connection with the policy of insurance in the pending suits and pray that said court enter a judgment declaring that the plaintiff is not bound by reason of the issuance of this policy to pay any damages which may be assessed in one or both of said suits in the event that the court finds that the statements made by the defendants, H. D. Carmical and Charles Thomas Carmical, previous to the filing of said suits are true." In my judgment this prayer raises an issue which has not been passed upon by the majority opinion. I think it is the duty of this court to pass upon this question regardless of how unmeritorious the contention of the insurance company may be as to this point. The point is made and my view on it is as follows: Under coverage A, the insurer would be obligated to pay all sums which an insured, under the policy terms, should become legally obligated to pay whether the basis of liability of the son as an insured is based on the named insured's permission for his son to drive the truck, which would constitute the son an insured, under the policy, or whether the liability of the named insured is based on Ga. L. 1955, p. 454 (Code, Ann., § 68-301), the constitutionality of which has not been decided to this date insofar as we are informed. Both of these questions

are matters for determination in the trial of the damage actions against the father and son on the issue of their liability and it is not the purpose and intent of the declaratory judgment law to provide for the trial of such issues when it would result in the piecemeal trial of the damage actions. If such were the case half of the issues in the damage actions would be settled by the declaratory judgment action and the questions of negligence, proximate cause, etc., would be decided in the damage actions. Questions relating to the insurance company's liability under an insurance policy are not the proper subject matter in a declaratory judgment action if these questions are pertinent and necessary to a determination of the liability of an insured in an action for damages against the insured or insureds in the policy of insurance. Such questions can only be resolved in an action against the insurance company after a finding of liability against the insured. As to this phase of the declaratory judgment proceeding there was no justiciable issue on which the proceeding would be based.